534 S.E.2d 363

Calvin Leon HAMLIN

v.

COMMONWEALTH of Virginia.

Record No. 1412–99–2.

Court of Appeals of Virginia,
Richmond.

Sept. 26, 2000.

**496**

Gregory W. Franklin, Assistant Public Defender (David J. Johnson, Public Defender, on brief), for appellant.

Marla Graff Decker, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON, WILLIS and HUMPHREYS, JJ.

HUMPHREYS, Judge.

Calvin Leon Hamlin was convicted in a bench trial of possession of cocaine. He argues on this appeal that the trial court erred in failing to grant his motion to suppress the evidence based upon his illegal detention by police officers. For the reasons that follow, we affirm his conviction.

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to

the Commonwealth, constituted reversible error.'" *McGee v. Commonwealth,* 25 Va.App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (citation omitted). "[W]e review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." *Hayes v. Commonwealth,* 29 Va.App. 647, 652, 514 S.E.2d 357, 359 (1999) (citation omitted). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee,* 25 Va.App. at 198, 487 S.E.2d at 261 (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

## BACKGROUND

On August 15, 1998, Richmond police officers, Douglas P. Vilkowski and Jason A. Yarema, were on patrol and stopped a car with no front license plate. The car was driven by Jesse Hamlin, appellant's cousin. Calvin Hamlin, the appellant, occupied the front passenger seat, and Mathew Pitchford was a passenger in the rear seat.

Yarema saw appellant reaching down and forward in front of his seat, and believing that appellant might have a weapon, Yarema approached the passenger side of the vehicle to ask appellant to get out of the car. When appellant complied, Yarema briefly placed handcuffs on appellant and patted him down for weapons. He found none. Officer Yarema then looked into the vehicle and found a brown paper bag containing an open bottle of beer on the floorboard in front of the passenger seat. He then looked under the passenger seat for weapons and found none. Officer Yarema next asked appellant to get back in the car, which appellant did. Yarema asked appellant and Pitchford for identification in order to investigate a possible open container violation, although he did not share his purpose with them. During this time, Vilkowski was charging Jesse Hamlin with driving on a suspended license.

After receiving identification from appellant and Pitchford, Officer Yarema walked to the rear of the stopped vehicle where he could keep the occupants in view while he communicated their identifying information to the dispatcher. Within fifteen to twenty seconds, Yarema noticed appellant again reaching down and forward in the vehicle. Yarema then walked back to the passenger side of the vehicle and shined his flashlight inside. He saw appellant holding a clear plastic bag with a white powder substance, in the process of placing it under the seat. Yarema told appellant to put his hands up and get out of the car. When appellant failed to comply, Yarema opened the door and physically removed appellant. After a brief struggle, Yarema and Officer Vilkowski placed him under arrest. Found in appellant's hand was a red pouch containing a digital scale, razor blades, tinfoil, cut squares of paper and mannitol (a cutting agent for narcotics). The white powder later tested positive for cocaine.

## ANALYSIS

Appellant argues that once Yarema satisfied himself there were no weapons on appellant's person or within his reach in the vehicle, the officer had no authority to further detain him by requesting identification and asking him to be seated in the car. We disagree.

"The [F]ourth [A]mendment does not proscribe all seizures, only those that are 'unreasonable.' Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers." *Bethea v. Commonwealth,* 14 Va.App. 474, 476, 419 S.E.2d 249, 250 (1992) (*en banc*) (citation omitted), *aff'd on other grounds,* 245 Va. 416, 429 S.E.2d 211 (1993). The validity of a seizure " 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472

U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (quoting *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)).

In *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), in ruling that an officer may order a passenger from a vehicle, the United States Supreme Court noted that "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle." *Id.* at 413–14, 117 S.Ct. at 886. We have held previously that officers may detain passengers until the completion of a lawful traffic stop. *See Hatcher v. Commonwealth,* 14 Va.App. 487, 491–92, 419 S.E.2d 256, 259 (1992).

Under these facts, the vehicle was the subject of a lawful traffic stop, and appellant was necessarily detained for the duration of that event.

■ Following a lawful traffic stop, the Fourth Amendment permits the police to order the passengers to get out of the car pending the completion of the stop. This authority over passengers at a lawful traffic stop is deemed a "reasonable" seizure under the Fourth Amendment because the "weighty [public] interest in officer safety" during traffic stops, which "may be dangerous encounters," sufficiently outweighs the minimal additional intrusion upon the private interests of passengers, who "are already stopped by virtue of the [lawful] stop of the vehicle." *Wilson,* 519 U.S. at 413–14, 117 S.Ct. at 885–86; *see also Hatcher,* 14 Va.App. at 490–92, 419 S.E.2d at 258–59.

Appellant does not contest his "seizure" by Yarema in asking him to leave the vehicle, placing him in handcuffs briefly and conducting a "pat-down" search of his clothing following appellant's movements in initially reaching down in the vehicle. He argues, however, that once the officer satisfied himself that appellant was unarmed, no reasonable, articulable suspicion existed for any further search, seizure or detention. He argues further, that in asking for and receiving appellant's identification and ordering appellant back into the vehicle, Yarema's "seizure" of appellant went beyond the *de*

*minimis* detention necessitated by the stop of the vehicle. He asserts that although a pat-down search for weapons might be permitted under the doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and our holding in *Thomas v. Commonwealth,* 16 Va.App. 851, 857, 434 S.E.2d 319, 322–23 (1993), *aff'd on reh'g en banc,* 18 Va.App. 454, 444 S.E.2d 275 (1994), his detention continued after the completion of the pat-down search when Yarema asked for and received his identification and ordered appellant to return to his seat in the vehicle.

■ To the contrary, the Commonwealth argues that notwithstanding the direction of Officer Yarema to appellant to return to the vehicle, as well as his possession of appellant's identification, a reasonable person under these circumstances would have felt that he was free to leave. We agree with appellant and disagree with the Commonwealth. We find that under these circumstances, from the point at which Yarema asked for and received appellant's identification and ordered him back into the vehicle, a reasonable person would believe that his liberty had been restrained. We find, therefore, that appellant was being detained in his own right, and not simply incidental to the traffic stop.

■ However, under well established Fourth Amendment principles, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citation omitted). "Actual proof that criminal activity is afoot is not necessary...." *Harmon v. Commonwealth,* 15 Va.App. 440, 444, 425 S.E.2d 77, 79 (1992) (citation omitted). Officer Yarema was entitled to investigate the circumstances surrounding the presence of an open container of an alcoholic beverage in the car.

■ When "evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *United States v.*

*Sharpe,* 470 U.S. 675, 694, 105 S.Ct. 1568, 1580, 84 L.Ed.2d 605 (1985) (Marshall, J., concurring). The test is whether the police methods were calculated to confirm or dispel the suspicion quickly and with minimal intrusion upon the person detained. *See Thomas,* 16 Va.App. at 856–57, 434 S.E.2d at 323.

In evaluating this investigative detention, we note that appellant was simply asked to return to the passenger seat he occupied at the time the vehicle was stopped and was not otherwise restrained. Furthermore, this investigative detention only lasted between fifteen and twenty seconds before appellant's actions in the car prompted another change in his custody status. We, therefore, cannot say that based upon the totality of the circumstances, such a brief detention to investigate possible criminal activity was unreasonable.

Moreover, the issue of appellant's custody status is less important when, as here, the initial seizure of the contraband is not the result of a search of his person, but rather is seized after being found in "plain view" in a vehicle that is necessarily stopped for the duration of the investigation of the activities of the driver. The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view. *See Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2305–06, 110 L.Ed.2d 112 (1990).

> [I]n order for a seizure to be permissible under the plain view doctrine, two requirements must be met: "(a) the officer must be lawfully in a position to view and seize the item, [and] (b) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject to seizure."

*Conway v. Commonwealth,* 12 Va.App. 711, 718, 407 S.E.2d 310, 314 (1991) (*en banc*) (citation omitted).

Irrespective of his status as a detainee, appellant was a passenger in a vehicle that was the subject of a valid traffic stop. Yarema was on a public street, outside and beside the passenger door. From his position, with the aid of his flashlight, he observed appellant trying to conceal the bag

of white powder beneath the passenger seat. We find that appellant gave up any expectation of privacy when he brought the contraband into Yarema's "plain view." The Fourth Amendment was, therefore, not implicated in the warrantless seizure of the bag of suspected cocaine. Based upon that seizure, we further find that probable cause existed for appellant's subsequent arrest. Therefore, the additional seizure of the pouch incident to his arrest was proper.

Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

BENTON, Judge, dissenting.

What is not at issue in this appeal is Officer Yarema's authority initially to order Calvin Leon Hamlin to exit the car and to perform a pat-down search upon the officer's articulable suspicion that Hamlin was armed. Hamlin concedes that *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), gives the officer that authority. Rather, the issue is the lawfulness of the officer's conduct following the pat-down search that failed to produce evidence that Hamlin possessed weapons. I agree with the majority opinion that from this point Hamlin "was being detained in his own right, and not simply incidental to the traffic stop." I disagree, however, that the officer's further detention of Hamlin was lawful.

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The United States Supreme Court has never held that a police officer may detain a passenger during the period the driver is being detained, merely because the driver has committed a traffic offense. Recognizing that "there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out," the Court merely ruled that in requiring a passenger to exit the car, "the additional intrusion

**504**

on the passenger is minimal." *Wilson*, 519 U.S. at 414–15, 117 S.Ct. at 886. The Court further noted as follows:

> [T]he case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment.

*Id.* at 413–14, 117 S.Ct. at 886.

The Supreme Court expressly declined to address the issue of a detention of a passenger beyond that inherent in the initial stop and the additional "minimal" intrusion when the passenger is ordered out of the vehicle. *See id.* at 415 n. 3, 117 S.Ct. at 886 n. 3. The Court held in *Wilson* only "that an officer making a traffic stop *may order passengers to get out* of the car pending completion of the stop." *Id.* at 415, 117 S.Ct. at 886 (emphasis added). Ordering a passenger out of the car pending completion of the stop is a significantly less intrusive process than ordering the passenger to remain at or in the car after the passenger has been ordered to leave the car. Clearly, any further detention of the passenger must be governed by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Applying *Terry* principles, the officer had no basis to order Hamlin to enter the car and remain there after he determined that Hamlin possessed no weapons. *See id.* at 30, 88 S.Ct. at 1884–85. The officer testified that he took Hamlin's identification and that Hamlin was not free to leave. The officer had no reasonable basis, however, to take Hamlin's identification. He testified that he took Hamlin's identification to begin "running it ... for an information check" because Hamlin "was under investigative detention for the open alcoholic beverage con-

tainer in the vehicle." He also testified, however, that he never charged Hamlin with any offense connected with the alcoholic beverage. Indeed, the officer's seizure of Hamlin for possessing the alcoholic beverage was unlawful because the officer had no reasonable basis to detain Hamlin. No city ordinance or state law bars a passenger in a vehicle from having an alcoholic beverage in an open container. The Commonwealth concedes this point but argues that "[a]t most, the officer may have made a 'mistake of law' " and did not act in "bad faith."

An officer's detention of an individual based on a mistaken view that he or she has witnessed a violation of law is not objectively reasonable, however, and, therefore, is unlawful. *See United States v. Lopez–Valdez,* 178 F.3d 282, 288–89 (5th Cir.1999) (holding that an officer's detention of the accused for what the officer mistakenly believed was a violation of the Code was unreasonable). An officer's good intentions cannot convert an objectively unreasonable view of the law into a lawful detention. " '[G]ood faith on the part of the arresting officer is not enough. . . .' If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects, only in the discretion of the police.' " *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880 (quoting *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964)) (internal quotations and citations omitted). "[I]f officers are allowed to stop [individuals] based upon their subjective belief that . . . laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of . . . infractions as pretext for effecting [detentions] seems boundless and the costs to privacy rights excessive." *Lopez–Valdez,* 178 F.3d at 289.

"If the initial traffic stop was illegal or the officers exceeded the stop's proper scope, the seized contraband is excluded under the 'fruit of the poisonous tree doctrine.' " *United States v. Rusher,* 966 F.2d 868, 875 (4th Cir.1992) (citing *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963)). The officer detained Hamlin under the

pretense that he was investigating Hamlin for possessing in a car an open alcoholic beverage container, a non-existent offense. Furthermore, the officer exceeded the proper scope of the stop by unlawfully detaining Hamlin and the other passenger "for an information check."

Officer Yarema unlawfully seized Hamlin when he ordered Hamlin to return to the automobile and remain there while the officer checked the status of his identification. *See Deer v. Commonwealth,* 17 Va.App. 730, 736–37, 441 S.E.2d 33, 37–38 (1994). Hamlin's continuing presence in the automobile was the direct result of the officer's command that he remain in the automobile—an unlawful detention. Thus, any claim that this case merely concerns a seizure of an item in plain view fails. The officer's seizure of the cocaine was a fruit of the unlawful detention because it was a derivative of the initial illegality. *See id.* Any evidence obtained as a result of the continued seizure was inadmissible as the fruit of the poisonous tree.

For these reasons, I would hold that the trial judge erred in denying the motion to suppress. I dissent.