COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


ERIC MICHAEL PRUNTY

                                        MEMORANDUM OPINION* BY
v.     Record No. 2074-00-1            JUDGE ROBERT P. FRANK
                                            JULY 3, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                    Dean W. Sword, Jr., Judge

          S. Jane Chittom, Appellate Defender (Public
          Defender Commission, on briefs), for
          appellant.

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Eric Michael Prunty (appellant) was convicted, in a bench

trial, for possession of cocaine with the intent to distribute, in

violation of Code § 18.2-248.  On appeal, he contends the trial

court erred in denying his motion to suppress the drugs seized by

the police because the police had no "reasonable suspicion" to

stop his vehicle.  Finding no error, we affirm the judgment of the

trial court.

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.  BACKGROUND

On the afternoon of September 15, 1999, Officers G.C. Richardson and G.B. Smith of the City of Portsmouth Police Department were on uniformed patrol in a marked police car. The officers had met with narcotics detectives earlier and were shown a picture of appellant. They were told to be on the lookout for him and were directed to a specific location. The officers also were given information describing the car he would be driving, a Ford Taurus, and were told that his driver's license was suspended. Appellant was expected to be carrying a large amount of crack cocaine. The information was that appellant's vehicle would be passing through that area "within the next couple of minutes or within the hour." When the vehicle passed by the officers, they were to stop it if appellant was the driver and then arrest him.

Once in the police car, Richardson had Smith verify through the dispatcher that appellant's license was actually suspended. Consequently, they knew that if appellant was driving the vehicle, he would be doing so on a suspended license.

The officers drove to the designated location. Richardson, who was driving, saw a burgundy Ford Taurus pass them, heading westbound. The vehicle, however, had "very, very dark tinted" side windows, which caused the officers to be unable to see inside the vehicle in order to identify the driver.

-

Officer Richardson activated his emergency lights and stopped the vehicle because of the excessive tint on the windows. Richardson approached the vehicle on the driver's side, and Officer Smith approached on the passenger's side. When Richardson walked up to the driver's side door, he was still unable to see inside because of the dark tint on the windows. He knocked on the window. Appellant, who was driving, opened the driver's door and asked "what the problem was." It was only after appellant opened the door that the officer could see him. Richardson told appellant that the tint on his windows was too dark. The officers then asked appellant if he had his driver's license and registration. Instead of producing a driver's license, appellant provided the officer with an identification card. The officer, through the dispatcher, again confirmed that appellant's license was suspended.

Richardson testified that his legal basis to stop the car was the tinted windows. He stated, "I pulled it for tinted windows." Asked whether he knew how much tint was legal on car windows, Richardson said he had no idea. Officer Robinson, over the radio, advised Richardson that the tint was so dark as to be illegal. Officer Robinson was not at the scene when he advised Richardson that the window tint violated the Code. Richardson testified that "all [he knew about the legality of the window tint was] what Officer Robinson told [him] over the radio." Officer Robinson

-

never came to the scene until after appellant's arrest. Robinson did not testify.

The officers asked appellant to get out of the car and walk between his car and the police car. Appellant complied with the request. Richardson arrested him for driving on a suspended license, and Officer Smith took custody of him.

Officer Smith handcuffed appellant and frisked him. Smith found a total of $1,848 and a pager. During the frisk, Officer Smith also felt an object in the area of appellant's groin. Smith suspected that appellant was hiding narcotics. He told Richardson what he suspected and asked Richardson also to frisk appellant. Richardson did so and verified the suspicious object hidden between appellant's legs.

Once at police headquarters, after obtaining permission from a sergeant, Officer Smith conducted a complete search of appellant, which included a strip search.

A large quantity of crack cocaine was found in the area of appellant's groin. Appellant was arrested for the drug offense and was issued summonses for driving on a suspended license and having improperly tinted windows.

The trial court denied appellant's motion to suppress, finding that the officers had "reasonable suspicion" to stop appellant's vehicle.

-

## II.  ANALYSIS

> "In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).  "[W]e review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case."  Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999) (citation omitted).  "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

Hamlin v. Commonwealth, 33 Va. App. 494, 497-98, 534 S.E.2d 363, 364 (2000), aff'd, 35 Va. App. 375, 545 S.E.2d 556 (2001) (en banc).

"'[P]olice officers may approach a person for the purpose of investigating possible criminal behavior even though no probable cause exists for arrest.'"  Johnson v. Commonwealth, 20 Va. App. 49, 54, 455 S.E.2d 261, 264 (1995) (quoting Quigley v. Commonwealth, 14 Va. App. 28, 32, 414 S.E.2d 851, 853-54 (1992)).  "The standard for conducting such a detention is less than probable cause, but more than an 'inchoate and unparticularized suspicion or "hunch."'"  Gregory v. Commonwealth, 22 Va. App. 100,

-

105, 468 S.E.2d 117, 120 (1996) (quoting Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (citation omitted)). Therefore, "[a]n investigative detention to detect or prevent incipient criminal activity is, when supported by the officer's reasonable and articulable suspicion that criminal activity may be afoot, consonant with the fourth amendment protections against unreasonable seizures." Layne v. Commonwealth, 15 Va. App. 23, 25, 421 S.E.2d 215, 216 (1992) (citations omitted).

Thus,

> [t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

Adams v. Williams, 407 U.S. 143, 145-46 (1972) (citations omitted).

Clearly, the officers intended to arrest appellant because of the information received from the narcotics detectives. Appellant argues that the dark tint on his windows served only as a pretext to stop the car.

However, an officer's subjective intent in making a traffic stop is irrelevant in determining a Fourth Amendment violation.

-

See <u>Limonja v. Commonwealth</u>, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989) (<u>en</u> <u>banc</u>) ("Police actions are to be tested 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.'").

Our inquiry then is to determine whether the officers had "reasonable suspicion" to stop appellant's car, whether there was "reasonable suspicion" to believe that appellant violated the statutory provisions dealing with tinted windows.[1]

---

[1] Code § 46.2-1052(A) provides, in part:

> Except as otherwise provided in this article or permitted by federal law, it shall be unlawful for any person to operate any motor vehicle on a highway with any sign, poster, colored or tinted film, sun-shading material, or other colored material on the windshield, front or rear side windows, or rear windows of such motor vehicle. This provision, however, shall not apply to any certificate or other paper required by law or permitted by the Superintendent to be placed on a motor vehicle's windshield or window.

Code § 46.2-1052(C)(1)-(3) provides:

> Except as provided in § 46.2-1053, but notwithstanding the foregoing provisions of this section, no sun-shading or tinting film may be applied or affixed to any window of a motor vehicle unless such motor vehicle is equipped with a mirror on each side of such motor vehicle, so located as to reflect to the driver of the vehicle a view of the highway for at least 200 feet to the rear of such vehicle, and the sun-shading or tinting film is applied or affixed in accordance with the following:
> 1. No sun-shading or tinting films may be applied or affixed to the rear side

-

Appellant contends the officer did not have reasonable suspicion to believe he violated Code § 46.2-1052 because the officer testified he did not know how much tint was permissible on the side windows.  Rather, the officer relied on Officer

windows or rear window or windows of any motor vehicle operated on the highways of this Commonwealth that reduce the total light transmittance of such window to less than thirty-five percent;

2.  No sun-shading or tinting films may be applied or affixed to the front side windows of any motor vehicle operated on the highways of this Commonwealth that reduce total light transmittance of such window to less than fifty percent;

3.  No sun-shading or tinting films shall be applied or affixed to any window of a motor vehicle that (i) have a reflectance of light exceeding twenty percent or (ii) produce a holographic or prism effect.

Any person who operates a motor vehicle on the highways of this Commonwealth with sun-shading or tinting films that (i) have a total light transmittance less than that required by subdivisions 1 and 2 of this subsection, (ii) have a reflectance of light exceeding twenty percent, or (iii) produce holographic or prism effects shall be guilty of a traffic infraction but shall not be awarded any demerit points by the Commissioner for the violation.

Any person or firm who applies or affixes to the windows of any motor vehicle in Virginia sun-shading or tinting films that (i) reduce the light transmittance to levels less than that allowed in subdivisions 1 and 2 of this subsection, (ii) have a reflectance of light exceeding twenty percent, or (iii) produce holographic or prism effects shall be guilty of a Class 3 misdemeanor for the first offense and of a Class 2 misdemeanor for any subsequent offense.

-

Robinson's radio communication that the window tint violated the Code.

While the officer may not have known the precise amount of tinting allowable by law, he suspected the car violated the statute because he could not see into the car due to the dark tinting.  He radioed another officer with expertise in tinting and requested the tinted windows be tested to determine if they violated the law.

Clearly, it would be unreasonable to require an officer to determine the percentage of the amount of reduction of "light transmission" before stopping a vehicle whose windows are so darkly tinted as to prevent the officer from seeing through the window.  To sustain appellant's argument would also require an officer to perform a drug analysis prior to stopping a vehicle upon reasonable suspicion for the possession of drugs.

Here, the officer had more than an "unparticularized suspicion or hunch."  He had reasonable suspicion to believe appellant violated Code § 46.2-1052 and properly stopped the vehicle to "dispel or confirm" his suspicions.

For these reasons, we conclude that the trial court did not err in denying the motion to suppress.  We, therefore, affirm appellant's conviction.

<u>Affirmed.</u>

-