COURT OF APPEALS OF VIRGINIA

Present:   Judges Annunziata, Kelsey and Senior Judge Overton
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                            MEMORANDUM OPINION[*] BY
v.        Record No. 0583-04-1                    JUDGE ROSEMARIE ANNUNZIATA
                                                                     JULY 27, 2004
BRANDON WASHINGTON


                   FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                                        Marc Jacobson, Judge

               Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
               Attorney General, on brief), for appellant.

               No brief or argument for appellee.


        This Commonwealth's appeal arises from the trial court's decision to suppress evidence

police found in the course of searching Brandon Washington's vehicle.  The Commonwealth

contends that the trial court erred in finding that Washington was the subject of an illegal

detention which "tainted" the consent he gave to the police request to search his vehicle.  For the

reasons that follow, we reverse and remand for further proceedings if the Commonwealth be so

advised.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Counsel for Washington, William P. Robinson, Jr., failed to file an appellee's brief in
opposition to the issues raised by the Commonwealth in its opening brief.  As a result of his
failure to file an appellee's brief, Mr. Robinson was precluded from making oral argument before
this Court under Rule 5A:26.  Nor did Mr. Robinson seek leave under Rule 5A:3(b) to file an
untimely brief or request to be heard orally under Rule 5A:26, relief we routinely grant upon a
showing of good cause or to attain the ends of justice.  Notwithstanding the absence of any
meaningful advocacy on Washington's behalf, this Court has proceeded with the appeal,
consistent with its duty to resolve on the merits the issues presented.

I.  Background

Under settled principles of appellate review, we state the evidence, and all inferences that may be reasonably drawn from the evidence, in the light most favorable to Washington as the party who prevailed below.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  So viewed, the evidence in the record shows that on March 5, 2003, Officer Michael J. Reardon and his partner were on patrol in a marked police car in the City of Norfolk.  As Officer Reardon drove down a street, he saw Courtney Harris driving a car in the opposite direction.  Brandon Washington was a passenger in the car.  Reardon, a former vice and narcotics investigator, had known Harris for approximately ten years as a result of her involvement with "prostitution, narcotics and . . . [o]ther criminal activities."  Reardon also knew that Harris had a suspended driver's license.  Accordingly, when Reardon saw Harris driving, he turned his vehicle around, positioned himself behind the vehicle Harris was driving, and pulled it over.  He went to the driver's side window and stated to Harris, "Courtney, you shouldn't be driving."  Harris "admitted that she was suspended."  When Reardon asked Harris who owned the car, she told him the car belonged to Washington.

At that point, Reardon asked both Harris and Washington to exit the vehicle and they complied.  Washington gave Reardon his driver's license and registration when asked for identification.  In the course of the interchange, Reardon asked Washington why he was not driving and why he let Harris "drive if [he] knew her license was suspended."  He then asked Washington "if he had any narcotics on his person."  When Washington said "No," Reardon asked if he could search him.  Washington agreed.  The search yielded nothing incriminating.

While Reardon searched Washington, his partner "was running Mr. Washington on the computer . . . to find out if he had a [valid] driver's license."  The officers determined Washington's driver's license was valid and that no outstanding warrants were lodged against

him, but they retained Washington's identification papers while the investigation continued. Reardon told Washington that he was looking for drugs and asked Washington for consent to search his car, which he gave.

Reardon searched the car interior, but saw nothing "out of the ordinary." He then initiated a search of the trunk of the car by taking the keys out of the ignition and unlocking the trunk. While searching the trunk, he "found [a] shoebox containing suspected marijuana and suspected cocaine." He also described seeing "a green, leafy substance, . . . a hand scale, some packing material . . . [,] a Tupperware . . . bowl that had a razor blade and stems and seeds from the marijuana," a small plastic bag containing gel capsules, and a white powder which he testified appeared to be consistent with heroin. After Reardon advised Washington and Harris they were under arrest, he gave each their Miranda rights and then placed Washington in the back of his cruiser.

The grand jury for the City of Norfolk indicted Washington on May 23, 2003 for possession of heroin and possession of marijuana with intent to distribute. Washington filed a motion to suppress the evidence against him, alleging he was seized in violation of his Fourth Amendment rights and that he did not give consent for the search of his car. On December 11, 2003, the trial court held an evidentiary hearing on Washington's motion to suppress. On February 27, 2004, the trial court issued its decision on Washington's suppression motion by letter opinion, determining that Washington was illegally seized because "[t]he officers had neither a warrant nor reasonable articulable suspicion that criminal activity was afoot." Because it determined that Washington was illegally seized, the trial court concluded that Washington's consent to the requested search of his vehicle was "tainted" by the illegal seizure and that the exclusionary rule required suppression of the evidence obtained during the search. After entry of

the trial court's final order of March 5, 2003 granting Washington's motion to suppress the evidence against him, this appeal followed.

## II. Analysis

When reviewing a trial court's ruling on a motion to suppress, this Court reviews the evidence in the light most favorable to the prevailing party below and "grant[s] all inferences fairly deducible from that evidence." Grimstead, 12 Va. App. at 1067, 407 S.E.2d at 48. "'Ultimate questions of reasonable suspicion and probable cause' . . . involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). This Court also reviews *de novo* "the question whether a person has been seized in violation of the Fourth Amendment." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). However, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

"'The Fourth Amendment does not proscribe all seizures, only those that are unreasonable. Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers.'" Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 126-27 (1998) (en banc) (quoting Bethea v. Commonwealth, 14 Va. App. 474, 476, 419 S.E.2d 249, 250 (1992)) (some internal quotations omitted). "The validity of a seizure turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." Hamlin v. Commonwealth, 33 Va. App. 494, 499, 534 S.E.2d 363, 365 (2000) (internal quotations omitted). "In determining

- 4 -

whether a police officer had reasonable suspicion to justify an investigatory stop . . . , we must view the circumstances 'available to the officer' at the time of the seizure and search through the eyes of a reasonable person." Andrews v. Commonwealth, 37 Va. App. 479, 491, 559 S.E.2d 401, 407 (2002) (quoting Christian v. Commonwealth, 33 Va. App. 704, 711-12, 536 S.E.2d 477, 481 (2000) (en banc)).

> "[A]n officer need not suspect an individual of a particular crime in order to justify a Terry stop. A general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him at the time, articulate a reasonable basis for his suspicion."

Alston v. Commonwealth, 40 Va. App. 728, 738, 581 S.E.2d 245, 250 (2003) (quoting Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992)). Proof that criminal activity is afoot is not necessary; rather the investigating officer need only have reason to believe that it "may be afoot." Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

> A reasonable suspicion is more than an unparticularized suspicion or hunch. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop. . . . The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity.

Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000) (internal quotations omitted).

In the present case, Officer Reardon articulated a reasonable suspicion that criminal activity was afoot as the basis for conducting the traffic stop. Specifically, Reardon suspected Harris was driving on a suspended license, conduct that violates the provisions of Code

§ 46.2-301.[2] Given Officer Reardon's personal knowledge that Harris had a suspended driver's license, he could reasonably conclude that criminal activity was afoot when he saw Harris driving on a public highway, and he properly stopped her to obtain more information about her driving status.[3]

The question that remains before us is whether Washington, a passenger in the car, was also properly detained. We first note that, "'as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle.'" Hamlin, 33 Va. App. at 500, 534 S.E.2d at 365 (quoting Maryland v. Wilson, 519 U.S. 408, 413-14 (1997)). Indeed, it is settled law that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Wilson, 519 U.S. at 415; Alston, 40 Va. App. at 742, 581 S.E.2d at 252; see also Hatcher, 14 Va. App. at 491-92, 419 S.E.2d at 259 (holding officers may detain passengers until the completion of a lawful traffic stop).

However, it is undisputed that Reardon asked Washington not only to exit the car, but that Washington was further detained while the police conducted a computer check of his driver's license, vehicle registration, and criminal history. We hold that this detention was fully consistent with Washington's constitutional rights under Terry v. Ohio, 392 U.S. 1 (1968), because Harris, the driver of the car, admitted to Reardon that her driver's license was not valid

---

[2] Code § 46.2-301(B) provides, in relevant part, that

> no resident or nonresident (i) whose driver's license, learner's permit, or privilege to drive a motor vehicle has been suspended or revoked . . . shall thereafter drive any motor vehicle or any self-propelled machinery or equipment on any highway in the Commonwealth until the period of such suspension or revocation has terminated or the privilege has been reinstated.

Violation of the statute constitutes a Class 1 misdemeanor. Code § 46.2-301(C).

[3] The subsequent investigation revealed that, in fact, Harris's license was still suspended and she was not permitted to drive.

and told him that Washington owned the car. Thus, Reardon had an independent basis for detaining Washington based on his reasonable, articulable suspicion that Washington knowingly authorized or permitted an unlicensed driver to operate his car,[4] a violation of Code § 46.2-349.[5] See Hatcher, 14 Va. App. at 492, 419 S.E.2d at 259 (holding that, when police have reason to suspect the driver of criminal activity, "effecting a brief detention that includes not only the driver and his car but his passengers as well, seems a legitimate law enforcement goal" and that such "action is especially warranted when events subsequent to the lawful traffic stop focus suspicion on a passenger accompanying the driver"). In sum, Reardon's investigative detention, which was based on reasonable suspicion that Washington may have violated Code § 46.2-349, did not constitute an unlawful seizure and did not violate Washington's Fourth Amendment rights. It follows that, since Washington was not illegally detained, the trial court erred in finding that his consent to the police request to search his car was the "tainted" product of an unlawful seizure, warranting suppression of the evidence found as a result of that search. We accordingly reverse the trial court's decision to suppress the evidence and remand for further proceedings if the Commonwealth be so advised.

Reversed and remanded.

---

[4] When Washington's counsel asked Reardon to agree that he was not doing "anything suspicious," Reardon replied, "Well I knew he was allowing an unlicensed driver to drive."

[5] Code § 46.2-349 provides that "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so or in violation of any of the provisions of this chapter." Violation of this code section constitutes a Class 2 misdemeanor. Code § 46.2-350.