## CIRCUIT COURT OF THE CITY OF SALEM

Commonwealth of Virginia

v.

Reginald Ralph Berry, III

August 18, 2004

Case Nos. CR04-105: Malicious Wounding and
CR04-106: Use of Firearm in Commission of Felony

BY JUDGE ROBERT P. DOHERTY, JR.

Within minutes after a shooting, the Salem Police had obtained the alleged assailants name, address, and vehicle description. Salem Police immediately notified the Roanoke City Police to be on the lookout for the Defendant assailant because of his suspected involvement in the shooting and because his address was located in the City of Roanoke. A Roanoke City Police undercover unit went to Defendant's residence and, although it was dark, observed that someone was in the house and that Defendant's vehicle was parked in the back yard. When Defendant emerged from his house heading in the direction of his vehicle, he was stopped by the Roanoke City officers, handcuffed, and patted down. A pistol that he was lawfully carrying was found on his person. The Roanoke City officers explained to Defendant that the Salem Police had named him as the suspect in a shooting and that they were on their way to talk to him. Defendant was advised that he was not under arrest and the handcuffs were removed. Thereafter, he agreed to wait for the Salem police officer to arrive so he could talk to him and straighten out what

he believed was a misunderstanding, although he did acknowledge shooting someone in Salem that evening. Probable cause to arrest the Defendant existed at this point.

A Salem detective arrived approximately one hour later and also advised the Defendant that he was not under arrest. The Salem detective asked the Defendant if he would voluntarily come with him to the Salem Police Department and discuss the shooting. Defendant agreed and subsequently gave a taped statement, again admitting that he was involved in the shooting. Thereafter Defendant was arrested for malicious wounding and use of a firearm in the commission of malicious wounding.

While the detective was talking to Defendant at the Salem Police Department, the Defendant's vehicle was towed to the Salem impound garage and later searched by a Salem evidence technician. Four days later, after learning that the vehicle had been seized from Defendant's back yard rather than as a result of a traffic stop, a search warrant was obtained and the vehicle, which was still in police custody, was again searched.

Defendant has moved to suppress the statements he gave to the two police departments as well as the evidence obtained from the two searches of his vehicle. He claims that the statements are products of an unlawful arrest, that the first search of his vehicle was an unconstitutional warrantless search, and that the obtaining of a search warrant by the Commonwealth and the searching of the vehicle a second time did not cure the initial unconstitutional search.

The Commonwealth argues that Defendant, although initially stopped and detained briefly based upon reasonable suspicion that he had been involved in a violent felony, thereafter consented to wait for the Salem detective and voluntarily went with him to the Salem Police Department where he freely gave a statement. The Commonwealth further argues that the seizure of the Defendant's vehicle and its subsequent search arose from a misunderstanding on the part of the police that was later cured by obtaining a search warrant and again searching it. The Court finds that Defendant's statement is admissible but that the evidence recovered as a result of both searches should be suppressed.

### Initial Detention and Statements

The question of whether Defendant's statements are admissible turn upon the validity and duration of his investigatory detention by the Roanoke City police officers and upon whether or not he voluntarily went to the Salem Police Department to discuss his involvement in the shooting. It is axiomatic in the field of criminal law that a police officer may constitutionally conduct a brief, investigatory stop of an individual when the officer has a reasonable,

articulable suspicion that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1 (1968). That articulable suspicion is based upon an objective assessment of all of the facts and circumstances confronting the officer when he makes the investigatory stop. *Hamlin v. Commonwealth*, 33 Va. App. 494, 499 (2000). The facts and circumstances from which the officer develops his reasonable suspicion can be nothing more than information that has been communicated to him by other law enforcement officers. *Reed v. Commonwealth*, 36 Va. App. 260, 266 (2001). The facts and circumstances of which the officer is aware also assists him in determining the manner in which he should make the investigatory stop. When making a potentially dangerous "*Terry* Stop," some restraints for the protection of the officer and others may become necessary. Such restraints do not alter the character of the investigatory detention. In fact, courts routinely find in situations similar to those in this case, that a "brief, complete deprivation of a suspect's liberty, including handcuffing, [does] not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances." *Thomas v. Commonwealth*, 16 Va. App. 851, 857 (1993), *aff'd en banc*, 18 Va. App. 454 (1994). At the conclusion of an investigatory detention, if a person thereafter consents to a search, a seizure, a trip to the police station, or the giving of a statement, it becomes the duty of the Court to determine from the totality of the circumstances, as a matter of fact, whether that consent was voluntarily given. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996).

Considering all of the facts of this case, the Court finds that the Roanoke City police officers had reasonable and articulable suspicion to believe that Defendant had committed a crime, that he might be armed, and that he was probably dangerous. Their investigatory detention of Defendant was reasonable and appropriate. When the handcuffs were removed and Defendant agreed to wait for the Salem police officer to arrive so that he could talk to him and clear up the misunderstanding surrounding the shooting in Salem, the investigatory detention ceased. From that point, the waiting by Defendant for the Salem police officer to arrive was consensual. When the Salem police officer arrived he also advised Defendant that he was not under arrest and asked whether he would voluntarily consent to accompanying the officer to the Salem Police Department and discuss the shooting. Defendant agreed. The fact that Defendant accompanied the Salem detective to Salem to talk about the events surrounding the shooting was similarly consensual. Defendant was clearly not in custody and his statement to the Salem detective was clearly volitional. The Court finds, based on the totality of the circumstances, that those statements, as well as any statements given to the Roanoke City police officers that evening, were voluntarily given and will not be suppressed.

## Vehicle Search and Seizure

The Commonwealth mistakenly seized, towed, sequestered, and searched the Defendant's vehicle. It did so without the benefit of a search warrant, prior to the arrest of the Defendant, when exigent circumstances did not exist, on private property, and without Defendant's consent. Such warrantless searches violate the Fourth Amendment to the United States Constitution and "are per se unreasonable, subject to a few specifically established and well-delineated exceptions, and the Commonwealth has the heavy burden of establishing an exception to the warrant requirement." *Megel v. Commonwealth*, 262 Va. 531, 534 (2001). The Commonwealth argues that despite the fact that the vehicle was illegally seized, the evidence found in the search of the vehicle is admissible under the inevitable discovery rule. "For this exception to apply, the Commonwealth must establish: (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation." *Smith v. Commonwealth*, 41 Va. App. 704, 713 (2003). Nothing in the evidence presented or in the arguments of counsel leads the Court to believe that, but for the improper seizure of the vehicle, the evidence would have been discovered by any alternative line of investigation. The Commonwealth has failed to meet its heavy burden of proof necessary to apply this exception to the search warrant requirement. Accordingly, the first prong of the inevitable discovery rule has not been met. The evidence obtained from the first search will be suppressed pursuant to the exclusionary rule.

The search warrant that was later obtained to again search the illegally seized vehicle is not sufficient to cure the constitutional defect. Before the second search occurred, the Commonwealth discovered that it had Defendant's vehicle illegally detained but took no steps to return it. Presumably, this failure to return the vehicle occurred because the Commonwealth realized the error of its original warrantless search and believed that it could correct the error by keeping the vehicle impounded until a search warrant could be secured and a second search conducted. The failure to release the illegally seized and impounded vehicle, once the Commonwealth became aware of the impropriety of their conduct, has the same constitutional impact as a second seizure. From that time forward, the Commonwealth was no longer holding the vehicle in its impound lot under a mistake of fact. Instead, the Commonwealth knew as a matter of fact, that it was illegally holding the vehicle. The continued impoundment of Defendant's vehicle amounted to a pretext in order to effect a search for evidence in a

criminal case. Although Defendant's vehicle was not lawfully seized and held, even the "search of a lawfully impounded vehicle conducted pursuant to standard police procedure is reasonable under the Fourth Amendment unless it is a pretext concealing an investigatory motive. *Fisher v. Commonwealth*, 42 Va. App. 395, 380 (2004), *quoting South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). *See also Servis v. Commonwealth*, 6 Va. App. 507 (1988). The character of the vehicle, as being one that was unlawfully seized, never changed from the moment it was removed from the Defendant's yard until its return to the Defendant. When the Commonwealth seizes property in violation of the Fourth Amendment to the United States Constitution, the exclusionary rule applies. Absent an exception to the search warrant requirement, none of which apply in this case, nothing that the Commonwealth does thereafter will cure the unlawful seizure unless and until the seized property is returned to its rightful owner or otherwise lawfully acquired by the government. Defendant's motion to suppress evidence obtained as a result of the second search is also granted.