COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia


DARIUS MARQUIESE DUKES, S/K/A
 DARIUS MARQUISE DUKES

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1716-18-3            JUDGE MARY GRACE O'BRIEN
                                                         NOVEMBER 19, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
R. Edwin Burnette, Jr., Judge

Jim D. Childress, III (Childress Law Firm, PC, on brief), for
appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Darius Marquiese Dukes ("appellant") of robbery, in violation of Code

§ 18.2-58, and use of a firearm during the commission of a felony, in violation of Code § 18.2-53.1.

On appeal, he contests the court's denial of his pretrial motion to suppress.

BACKGROUND

At approximately 8:35 p.m. on November 22, 2017, Warren Fields, a clerk at Carter Bank &

Trust in the City of Lynchburg, was leaving the bank when two masked men approached him with a

gun.  The men took Fields's keys and entered the bank, activating a motion detection alarm.  The

men subsequently fled in a car that Fields described as an "older model vehicle," driven by a third

person.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On December 6, 2017, at approximately 10:45 p.m., three individuals committed an armed robbery at a Fast Mart near the Carter Bank & Trust. The robbery was recorded on the store's surveillance video, and the police released the footage to the public to obtain information about the incident. Fields saw the video and contacted Detective Robin Miller of the Lynchburg Police Department. Fields informed the detective that he noticed similarities between the men in the video and the men who approached him on November 22. Fields also told Detective Miller that at approximately 7:45 p.m. on December 6, he saw a vehicle park in the same location from where the robbers fled on November 22. He provided the car's license plate number to Detective Miller.

Using that information, Detective Miller determined that Ronnie Peterson, a Virginia University of Lynchburg student, had registered the car with campus police. Peterson also was a suspect in a 2015 robbery that occurred at the same Fast Mart. Detective Miller published a "be on the lookout" bulletin to the police department containing information about the November and December incidents, the vehicle, and Peterson.

On December 7, 2017, while on his way home from work, Sergeant Brandon Clark observed the vehicle described in the bulletin. Sergeant Clark saw the driver suddenly accelerate several times, follow too closely behind another vehicle, and make an unsafe lane change. He observed two or three people in the car, which eventually pulled into a Kmart parking lot and parked in the fire lane.

Along with two other officers who arrived as backup, Sergeant Clark conducted what he characterized as a "felony vehicle stop." The officers held the car at gunpoint while taking cover behind their vehicles. They called the occupants to exit the car one at a time, starting with the driver. Peterson was driving the car, appellant was in the front passenger seat, and a third man, Malcolm West, was in the left rear passenger seat. Peterson exited first, and Sergeant Clark patted him down for weapons. Sergeant Clark felt a "baggy containing a substance in [Peterson's] right

watch pocket of his pants and [] saw a knotted baggy top sticking out of the top of the pocket." Sergeant Clark also smelled the odor of marijuana on Peterson who admitted that there was marijuana inside the vehicle.

The police conducted an initial search of the vehicle, and another more comprehensive search after obtaining a search warrant. Inside the vehicle, they discovered several items connected to the robberies, including disposable blue vinyl gloves,[1] Fields's keys, and a firearm. Appellant did not claim any interest in the seized property, and the record does not indicate that he made any statements to police during the traffic stop. On December 19, 2017, two detectives interviewed appellant about the Fast Mart robbery; he did not admit any involvement in the crime.

A grand jury indicted appellant for robbery and use of a firearm in commission of a felony for the December 6, 2017 incident at Fast Mart. Appellant filed a motion to suppress all statements made in violation of his constitutional rights and any evidence resulting from his seizure and the search of Peterson's vehicle on December 7, 2017. The court denied his motion both as to his statements and the evidence recovered from Peterson's vehicle. It found that Sergeant Clark had reasonable articulable suspicion to stop the vehicle due to Peterson's driving behavior and his act of parking in a fire lane. The court also concluded that based on inevitable discovery, seizure of the physical evidence obtained after the traffic stop did not violate appellant's Fourth Amendment rights.

ANALYSIS

Appellant challenges the court's denial of his motion to suppress evidence obtained as a result of the December 7, 2017 traffic stop. "A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de*

---

[1] A Fast Mart employee, Manpreet Singh, testified at trial that one of the individuals who robbed the store was wearing blue gloves.

*novo* on appeal." Murphy v. Commonwealth, 264 Va. 568, 573 (2002). We defer to the trial court's factual findings but "independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. Appellant bears the burden of proving that denial of his suppression motion constituted reversible error viewing the "evidence in the light most favorable to the Commonwealth and . . . accord[ing] the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Branham v. Commonwealth, 283 Va. 273, 279 (2012).

The Fourth Amendment guarantees, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To protect these guarantees, the United States Supreme Court "established the 'exclusionary rule' which prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused." Commonwealth v. Ealy, 12 Va. App. 744, 750 (1991) (quoting Reynolds v. Commonwealth, 9 Va. App. 430, 435 (1990)); see Mapp v. Ohio, 367 U.S. 643, 648, 657-60 (1961) (making the exclusionary rule applicable to the states through the Due Process Clause of the Fourteenth Amendment). However, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). Therefore, to assert Fourth Amendment protections, a defendant must "objectively [have] had a reasonable expectation of privacy at the time and place of the disputed search." Ealy, 12 Va. App. at 751 (quoting McCoy v. Commonwealth, 2 Va. App. 309, 311 (1986)).

We review *de novo* the determination of whether appellant possessed a reasonable expectation of privacy. See McCary v. Commonwealth, 36 Va. App. 27, 35-36 (2001). Appellant had the burden to demonstrate that he had a legitimate expectation of privacy in the vehicle. See Sanders v. Commonwealth, 64 Va. App. 734, 744 (2015). Factors to be considered in making this determination include "whether [appellant] had a possessory interest in the place, had the right to

- 4 -

exclude others from the place, and took normal precautions to maintain privacy in the place." Ealy, 12 Va. App. at 751. A passenger who "assert[s] neither a property nor a possessory interest" in an automobile or property seized therefrom does not have standing to contest the search of the automobile. Rakas v. Illinois, 439 U.S. 128, 148 (1978); see also Atkins v. Commonwealth, 57 Va. App. 2, 14 (2010) (finding that a passenger lacked standing when he made no showing of a possessory interest in the vehicle, a right to exclude others from the vehicle, or any control over the vehicle).

The Commonwealth asserts that appellant did not have standing to challenge the search of the vehicle because he failed to prove that he had a legitimate expectation of privacy in Peterson's car. We agree. The evidence from the suppression hearing and trial merely established that appellant was riding as a passenger in Peterson's vehicle when officers observed it parked in the Kmart fire lane. Appellant had no personal possessions in the vehicle, and he also failed to demonstrate that he either exercised control over the vehicle or had the right to exclude others from it. Therefore, he lacked standing to challenge the search of the vehicle.[2]

Despite appellant's lack of standing to challenge the search of the vehicle as a passenger, he is entitled to contest the stop of the vehicle based on the seizure of his person. See Brendlin v. California, 551 U.S. 249, 256-59 (2007). "A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, . . . and the police activity that normally amounts to intrusion on 'privacy and personal security' does not normally . . . distinguish between passenger and driver." Id. at 257 (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Therefore, "a passenger may bring a Fourth Amendment challenge to the legality of a traffic stop."

---

[2] The Commonwealth concedes it did not challenge standing in the trial court proceedings, and the court based its ruling on inevitable discovery. However, "[u]nder the right-result-different-reason doctrine, an appellee may assert for the first time on appeal a purely legal ground for upholding the challenged judgment." Collins v. Commonwealth, 297 Va. 207, 212 n.1 (2019).

Id. at 259. Here, however, appellant does not challenge the court's ruling that Sergeant Clark had reasonable suspicion to stop the vehicle. Rather, he contests the methods used to detain each of the vehicle's occupants and contends that the "felony vehicle stop" was a "full-blown seizure requiring a warrant or probable cause" because a reasonable person would have believed he was under arrest. Further, appellant does not contend, and the record does not reflect, that any physical evidence was seized from a search of his person or that he made any statements during the traffic stop on December 7, 2017. Accordingly, appellant only challenges the subsequent statements he made to police during the December 19, 2017 interview.

A "seizure" within the definition of the Fourth Amendment occurs when the "circumstances . . . amount to a show of official authority such that a 'reasonable person would have believed that he was not free to leave.'" Florida v. Royer, 460 U.S. 491, 502 (1983) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). However, the Fourth Amendment does not prohibit a limited seizure during an investigatory stop, otherwise known as a "Terry stop," when an officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" Shiflett v. Commonwealth, 47 Va. App. 141, 146 (2005) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)); see Terry v. Ohio, 392 U.S. 1, 26-27, 30 (1968).

Once the vehicle is stopped, "the Fourth Amendment permits the police to order the passengers to get out of the car pending the completion of the stop." Hamlin v. Commonwealth, 33 Va. App. 494, 500 (2000), aff'd en banc, 35 Va. App. 375 (2001). Although the seizure results in an intrusion on the passenger's liberty interest, "the 'weighty [public] interest in officer safety' during traffic stops, which 'may be dangerous encounters,' sufficiently outweighs minimal additional intrusion upon the private interests of passengers." Id. (quoting Maryland v. Wilson, 519 U.S. 408, 413-14 (1997)). See also Logan v. Commonwealth, 29 Va. App. 343, 361-62 (1999)

(noting reasonableness of officers' fear for safety when patting down passengers removed from a vehicle after the driver claimed ownership of a gun found on the dashboard).

"During Terry stops, the police are permitted to use methods of restraint that are reasonable under the circumstances." Harris v. Commonwealth, 27 Va. App. 554, 563 (1998) (concluding a trooper's act of drawing his gun on a defendant who failed to comply with an order to show his hands was reasonable and lawful under the Fourth Amendment). Based on the bulletin that he received, Sergeant Clark had information that the vehicle driven by Peterson was used in an armed robbery of the Fast Mart and the attempted armed robbery at Carter Bank & Trust. He had reason to believe that the occupants in the vehicle were armed and dangerous when he conducted the traffic stop. Therefore, the officers' actions in drawing their guns and ordering the vehicle's occupants out individually were "neither unreasonable nor conducted under circumstances that constituted the functional equivalent of an arrest." Thomas v. Commonwealth, 16 Va. App. 851, 858 (1993). Because appellant was lawfully detained on December 7, 2017, the court did not err in denying the motion to suppress his statements.

CONCLUSION

We find that because the police lawfully stopped Peterson's vehicle, and because appellant lacks standing to challenge the search of that vehicle, the court did not err in denying appellant's motion to suppress the evidence. Accordingly, we affirm appellant's convictions for robbery, in violation of Code § 18.2-58, and use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1.

Affirmed.