Alexandria
BRUCE ALFONSO HATCHER,
s/k/a BRUCE ALPONSO HATCHER
v.
COMMONWEALTH OF VIRGINIA
No. 2044-90-4
Decided May 26, 1992

Counsel

E. E. Sanders, Jr., for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**ELDER, J.**—Bruce A. Hatcher, appellant, appeals from his conviction at a September 25, 1990, bench trial of possession of cocaine. Prior to trial, on April 10, 1990, appellant moved to suppress evidence against him, which motion the trial court denied. On appeal, appellant asserts: (1) that the officer who detained him did not have the requisite reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968); (2) that the trial court erred in failing to suppress evidence seized in violation of Code § 19.2-83; and (3) that the court erred in failing to exclude a statement he made allegedly in response to police interrogation, while he was in custody, and without a *Miranda* warning. We affirm the judgment of the trial court.

Using radar at about midnight on August 13, 1989, Officer Robert Reetz of the Manassas Police Department detected a car approaching him at a high rate of speed. Without activating his emergency lights, Reetz started in pursuit, accelerated in order to keep up with the suddenly accelerating car, and watched as the car turned abruptly onto a side street, pulled to a stop, and went dark. Interpreting this as an evasive maneuver meant to elude his pursuit, Reetz pulled to a stop behind the car and activated his emergency lights. Appellant immediately exited the car from the passenger side and walked about twenty-five feet away before Reetz identified himself as a police officer and asked him to stop and return.

Pursuant to the driver's consent, Reetz conducted a search of the car. He then searched the immediate vicinity of the car and discovered a "stem," a device used to smoke crack cocaine, immediately behind the right front wheel on the passenger side of the car. Relying on his experience as a narcotics investigator, Reetz surmised that crack cocaine was present in the stem. He asked the four occupants of the car, "Whose is it?" and received no response. Reasoning that only appellant had been in a position to place the stem where Reetz had found it, and that it had to have been placed there after the car had rolled to a stop or it would have been crushed, Reetz placed appellant under arrest, handcuffed him, and put him in the back of the cruiser. He then issued the driver a summons for speeding, arrested a second passenger for possession of cocaine, and gained control of the situation following a small altercation.

During his ride in the police cruiser, apparently without any prompting by Reetz whatsoever, appellant announced, "It's not mine." Reetz answered, "What?" or "Pardon me?" Appellant repeated, "It's not mine. It was the man behind me. He saw you turning on us. He said he'd pay me $50 to get rid of it, so I took it, and I dumped it out of the car."

## I.

Appellant's first argument on appeal is that the officer who initially detained him did not have the requisite reasonable suspicion to do so under *Terry v. Ohio*, 392 U.S. 1 (1968).

■ Appellant's initial detention constituted a seizure under *Terry*. 392 U.S. at 16. In order to justify such a seizure, an officer must have a "reasonable and articulable suspicion of criminal activity on the part of the defendant." *Commonwealth v. Holloway*, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989). However, an officer need not suspect an individual of a particular crime in order to justify a *Terry* stop. A general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him at the time, articulate a reasonable basis for his suspicion.

Here, Officer Reetz personally observed highly evasive maneuvers on the part of the car he pursued. Moreover, at the moment Reetz stopped behind this car and activated his emergency lights, appellant exited and began to walk briskly away. While Reetz acknowledged that appellant apparently was not the driver of the vehicle, and thus was not responsible for the evasive driving, appellant had been a passenger in the vehicle. Moreover, it was appellant alone who sought to elude Reetz's investigation after the car had stopped.

■ As the United States Supreme Court noted in *Pennsylvania v. Mimms*, "[t]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" 434 U.S. 106, 108-09 (1977)(quoting *Terry*, 392 U.S. at 19). In *Mimms*, the Court found that, under all the circumstances of that case, a police officer making a routine traffic stop had been justified in asking the driver of the stopped vehicle to exit his car and thereby establish "a face-to-face confrontation" which "di-

minishes the possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault." *Id.* at 110. In reaching its conclusion, the Court noted the "inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.*

> "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings—A Tactical Evaluation, 54 Crim. L.C. & P.S. 93 (1963)." We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops."

*Id.* (citations omitted).

■ Against this important and legitimate law enforcement interest, the Court weighed "the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle . . . but by the order to get out of the car" and concluded that such an "additional intrusion" was *"de minimis." Id.* at 111. In his dissent in *Mimms*, Justice Stevens noted that "the Court's logic necessarily encompasses the passenger." *Id.* at 122. The following term, in his concurrence in *Rakas v. Illinois*, Justice Powell construed *Mimms* to mean "that passengers in automobiles have no Fourth Amendment right not to be ordered from their vehicle, once a stop is made." 439 U.S. 128, 155 n.4 (1978). *See also Bethea v. Commonwealth*, 14 Va. App. 474, 419 S.E.2d 249 (1992)(en banc).

Here, appellant was not ordered to exit the vehicle but to remain beside it while Officer Reetz conducted his brief follow-up investigation following his detention of the car and its occupants. As was the case in *Mimms*, the intrusion on appellant's privacy rights and freedom of movement was *de minimis* when weighed against Officer Reetz's significant interest in gaining control of and monitoring a potentially hazardous roadside stop in order to conduct his lawful investigation.

If a driver's maneuvers give rise to probable cause to believe that a traffic infraction has occurred, then effecting a brief detention that includes not only the driver and his car but his passengers as well, seems a legitimate law enforcement goal. This action is especially warranted when events subsequent to the lawful traffic stop focus suspicion on a passenger accompanying the driver.

## II.

Appellant also asserts that the trial court erred in failing to suppress evidence allegedly seized in violation of Code § 19.2-83. Code § 19.2-83 grants authority to an officer to detain a person only if he "reasonably suspects" the person "is committing, has committed or is about to commit a felony or possesses a concealed weapon."

> It is true, as defendant contends, that the language in that part of our statute which permits a police officer to stop a person whom he reasonably suspects is committing, has committed, or is about to commit a felony is more stringent than the requirement stated in *Terry*: "where a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot. . . ." However, the statute permits a police officer to stop a person whom he reasonably suspects possesses a concealed weapon.

*Simmons v. Commonwealth*, 217 Va. 552, 557, 231 S.E.2d 218, 221-22 (1977)(citations omitted).

The record in this case fails to establish that, at the time Reetz detained appellant, he had a reasonable basis for suspecting that appellant was committing, had committed, or was about to commit a felony. This Court's inquiry thus must focus on whether Reetz reasonably suspected that appellant was in possession of a concealed weapon and thus reasonably feared for his safety.

The record also fails to establish that Reetz had any reason to suspect that appellant possessed a concealed weapon. This case is thus distinguishable from *Lansdown v. Commonwealth*, 226 Va. 204, 308 S.E.2d 106 (1983), *cert. denied*, 465 U.S. 1104 (1984), in which an officer, after observing a van being operated in a "grossly reckless manner," stopped the vehicle on a dark street.

The officer in that case testified that, because the street was not lit and because the van had neither rear nor side windows, he was unable to monitor the activities of any of the passengers inside the van, none of whom were able to produce any identification. As a result, he was concerned for his safety, *id.* at 211, 308 S.E.2d at 111, and frisked the defendant, *id.* at 207, 308 S.E.2d at 108.

While the manner in which the vehicle was operated provided the constitutional justification for Officer Reetz's brief detention of the vehicle and its occupants, the record in this case does not establish that Reetz had, or claimed to have, an objectively reasonable basis to fear for his safety, other than that concern that naturally arises from the "especially hazardous" nature of any roadside encounter between police and suspects. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). The Commonwealth does not contend and the record does not establish that Reetz saw a need to frisk appellant for weapons.

Because appellant's detention was not justified under Code § 19.2-83 either by reasonable suspicion of a felony or by reasonable suspicion of the presence of a concealed weapon, the issue before this Court is whether exclusion of the fruits of that detention is the proper remedy.

█ This Court has held that the exclusion of evidence is not required where a statutory requirement is violated but, as is the case here, the Fourth Amendment is not.

> While violations of state procedural statutes are viewed with disfavor . . . the Virginia Supreme Court has consistently declined to impose an exclusionary rule where no deprivation of the defendant's constitutional rights occurred.

*Thompson v. Commonwealth*, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990)(citing *Horne v. Commonwealth*, 230 Va. 512, 519, 339 S.E.2d 186, 191 (1986)).

### III.

Finally, appellant claims that the trial court erred in failing to exclude a statement he made allegedly in response to police interrogation, while he was in custody, and without a *Miranda* warning.

The first issue before this Court with respect to this question is whether appellant was in custody for *Miranda* purposes after Reetz found the stem and asked, "Whose is it?"

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a defendant must be apprised of his constitutional rights prior to custodial interrogation. The Court defined such interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 444.

> In determining whether [a person] was in custody, the totality of the circumstances must be evaluated from the standpoint of a reasonable man in [that person's] position. Factors which must be considered include "whether a suspect is questioned in familiar or neutral surroundings, the number of officers present, the degree of physical restraint, and the duration and character of the interrogation." The language used by the officer to summon the individual and the extent to which he is confronted with evidence of guilt may also be significant factors.

*Lanier v. Commonwealth*, 10 Va. App. 541, 554, 394 S.E.2d 495, 503 (1990) (quoting *Wass v. Commonwealth*, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987)) (other citations omitted).

In assessing "the totality of the circumstances" of this case in light of our prior articulation of what constitutes custody, we find that appellant was not in custody for *Miranda* purposes when Reetz asked, "Whose is it?" First, the question was asked on a public street, a neutral setting. Second, it was posed by a lone police officer and was addressed generally to a group of four men. *See Taylor v. Commonwealth*, 10 Va. App. 260, 268, 391 S.E.2d 592, 597 (1990). Third, appellant was not under actual physical restraint at the time the question was posed. Fourth, the alleged "interrogation" consisted of one simple question. Finally, and most importantly, appellant did not respond to the question at that time.

At the time the question was posed, appellant's detention had not yet risen to the level of a formal arrest or its functional equivalent. During a *Terry* stop and investigation,

"the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively non-threatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*."

*Taylor*, 10 Va. App. at 267-68, 391 S.E.2d at 596 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984))(footnotes omitted).

Appellant, however, was clearly in custody for *Miranda* purposes at the time he made his self-incriminating statement to Reetz, for by then he had been placed formally under arrest, was handcuffed, and was put in the back of a police cruiser. However, it was appellant who initiated the conversation in which he made his self-incriminating statements. We reject appellant's argument that, despite the lapse of time between Reetz's question and appellant's statements, the statements were made in response to Reetz's earlier question. In *Miranda*, the Supreme Court held that custodial interrogation was "questioning initiated . . . *after a person has been taken into custody*." 384 U.S. at 444. The facts of this case fail to satisfy the terms of this definition.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Bray, J., and Moon, J., concurred.