JERRY LOUIS COCHRAN

v.

COMMONWEALTH OF VIRGINIA

No. 1472-91-2

Decided January 26, 1993

COUNSEL

Allen F. Bareford, for appellant.

Michael T. Judge, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Jerry Louis Cochran, appellant, appeals his conviction for possession of phencyclidine (PCP) with intent to distribute. He contends that the trial court erred in denying his motion to suppress evidence discarded by him during an allegedly illegal seizure, during which Officer Chewning instructed him to remain seated in a car in which he was a passenger. For the reasons set forth below, we reverse the ruling of the trial court.

I.

Officer Chewning received information from his dispatcher that an unidentified person had called about recovering some stolen property and would meet Chewning at the High's ice cream store on the corner of Leavell's and Courthouse Roads. Chewning drove up to the phone booth at that location and noticed a car parked next to it. Although it was after dark, the parking lot was well-lighted, and he could see an individual determined to be the driver leaning into the car, which had two other occupants. At that time, Chewning had no reason to suspect the driver or the passengers of any criminal activity. Chewning asked the driver, "Did anyone here call for the Sheriff's Department?" Before Chewning had received a response to his question, the man in the front passenger's seat (the appellant) started to get out of the car. Chewning asked the appellant to remain in the car while he talked to the driver, and the passenger complied. Chewning testified that he acted "for his" safety. Chewning's stated concern for his safety was not based on any objective observations, but merely because he did not know "exactly what was going on at the time." Chewning asked the driver to move to the rear of the vehicle so that he could monitor all three people at once, but just as he and the driver began to talk, the appellant again attempted to get out of the car. In a loud voice, Chewning told the appellant "to shut the door and stay in the vehicle." Appellant complied, but later got completely out of the car, "shoved a bluish colored bag up underneath the car and started back toward [Chewning]." Chewning noticed that appellant was "very wobbly on his feet, his eyes were very watery and red, and his speech was very slurred."

Chewning conducted a patdown search of appellant for weapons. After finding none, he called for a back-up unit. After it had arrived, he retrieved the blue bag discarded by appellant. In it he found three plastic bags and a film canister, all of which contained a green plant material with a very strong odor, which lab tests revealed to be PCP. Chewning testified that two to five minutes passed between the time when he first told appellant to stay in the car and the time when appellant got out.

Prior to trial, appellant moved to suppress the PCP on the ground that he had been seized without reasonable suspicion that he was involved in criminal activity. The motion was denied.

## II.

The first issue relates to the arguments to be considered on appeal. The Commonwealth contends that appellant is barred from raising on appeal two arguments that he failed to raise in the trial court. The Commonwealth is correct that at the hearing on the motion to suppress appellant failed to argue the "free to leave" test of *United States v. Mendenhall*, 446 U.S. 544 (1980), and the abandonment theory. He argued only that he was detained without reasonable suspicion in violation of *Terry v. Ohio*, 392 U.S. 1 (1968), and that the evidence he discarded during the illegal seizure was inadmissible. He attempted to distinguish that scenario from the facts of *California v. Hodari D.*, 499 U.S. 621 (1991), in which the illegal substance appellant discarded while fleeing from a police officer was held to be admissible because appellant had not yet been seized. Appellant did argue, however, that he had been unreasonably seized, which is sufficient to preserve the issue for appeal.

## III.

The Commonwealth also contends that appellant had no standing to contest the search and seizure of the bag because he disclaimed any possessory or ownership interest in it. Under this theory, it asserts, the bag was abandoned property for Fourth Amendment purposes and was properly admitted into evidence against him. Although appellant did not contest ownership at the suppression hearing, the Commonwealth argues that he did so at trial and that, because he renewed his motion to suppress at the close of trial, all evidence introduced at trial may be reviewed by this Court in determining the propriety of the denial of the motion to suppress. *See, e.g., DePriest v. Commonwealth*, 4 Va.

App. 577, 583, 359 S.E.2d 540, 543 (1987), *cert. denied*, 488 U.S. 985 (1988).

The Commonwealth's argument is somewhat misguided.[1] Contrary to appellee's assertions, appellant did not directly disclaim ownership. At trial, he called several witnesses who testified that they did not see him in possession of a blue bag on the evening in question, and his companion in the automobile testified that he did not see appellant place the bag underneath the car. Finally, because appellant did not testify, the record contains no direct evidence of denial of possession or ownership. The Commonwealth's assertion that appellant's evidence at trial denied ownership is correct only insofar as the statements of appellant's counsel reveal the lack of *proof* of ownership to be the theory of appellant's case. Furthermore, the cases the Commonwealth cites in support of its theory involved *direct* admissions or denials of ownership by the defendants, whereas this one did not. *See United States v. Johnston*, 685 F.2d 934, 939 (5th Cir. 1982), *cert. denied*, 460 U.S. 1053 (1983); *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir.), *cert. denied*, 459 U.S. 994 (1982).

Based on the above, we hold that the issue of standing is subsumed within the broader analysis of the propriety of the search under the Fourth Amendment.

## IV.

The remaining issue concerns whether appellant was subject to an unreasonable seizure at the time he allegedly discarded the PCP. Resolution of this issue requires us first to determine whether Officer Chewning's behavior constituted a seizure by means of a show of authority with which appellant complied. Under the Supreme Court's holding in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), "a person has been "seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Under the facts of this case—the officer's request, repeated twice in a raised voice, to stay in the car, accompanied by the presence

---

[1] It is misguided legally to the extent that the United States Supreme Court has expressly rejected the concept of a separate standing analysis in this context, holding that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Rakas v. Illinois*, 439 U.S. 128, 139 (1978).

of his uniform, badge, gun, and marked car—a reasonable person could have concluded that he was not free to leave.

In spite of the Commonwealth's assertions, the United States Supreme Court's holding in *California v. Hodari D.*, 499 U.S. 621 (1991)—in which the suspect fled immediately when first approached by the police—is not controlling. Here, appellant was clearly under the control of Officer Chewning, even though he did not obey Chewning's every command. All the evidence indicates that appellant never attempted to escape the officer's control. Even after getting completely out of the car, appellant did not attempt to leave the scene, but instead actually walked *toward* Officer Chewning. Clearly, a reasonable person in appellant's position would have believed that he was not free to leave. *Mendenhall*, 446 U.S. at 554.

The ultimate issue, then, is whether the seizure was justified. Although the case law provides us with some guidance, the facts of this case present us with a question of first impression. Most cases on this subject relate to automobiles that have been stopped based on some violation of the motor vehicle laws. The Supreme Court considered such a scenario in *Pennsylvania v. Mimms*, 434 U.S. 106, 107 (1977), where two officers stopped Mimms because the license plate on the car he was driving had expired. The Court held in that case that the officers did not violate Mimms' Fourth Amendment rights in asking him to get out of the car. *Id.* at 110-11. This was so, held the Court, because Mimms had already been lawfully detained, and the additional restriction on his personal liberty imposed by requiring him to get out of the car, when compared with the need for maintaining the officers' safety, was *de minimis. Id.*

This Court recently extended the ruling of *Mimms* to passengers. *Bethea v. Commonwealth*, 14 Va. App. 474, 476, 419 S.E.2d 249, 250-51 (1992) (en banc) ('[T]he principles upon which [Mimms] is based logically extend to encompass a passenger in a lawfully detained vehicle"). *See also Hatcher v. Commonwealth*, 14 Va. App. 487, 490-92, 419 S.E.2d 256, 258-59 (1992). The critical fact that distinguishes *Mimms*, *Bethea*, and *Hatcher* from this case is that in those earlier cases, the police stopped automobiles because of violations of law.

In the case at bar, in contrast to *Mimms*, *Bethea* and *Hatcher*, the car in which appellant was sitting was legally parked the entire time it

was within Officer Chewning's view and appeared to be in compliance with all applicable motor vehicle regulations. Officer Chewning admitted at trial that he had no reason to suspect the car's occupants of any illegal activity. Indeed, his whole rationale in approaching the car and its occupants in the first instance was to determine whether any of them had called in a tip concerning the location of some stolen property. Thus, Officer Chewning had no reason to suspect that anyone in the car would harm him. On the contrary, the most likely inference was that they might be able to provide him with assistance.

■ The holdings of *Mimms*, *Bethea* and *Hatcher* allow seizure of the driver and occupants of a car where reasonable suspicion exists to justify detention and questioning of the driver. However, these cases do not authorize the seizure of a vehicle's occupants in the absence of some reasonable suspicion of illegal activity involving the car or its occupants. The Commonwealth urges us to hold that legitimate security concerns justified Officer Chewning's efforts to maintain the status quo while briefly questioning the car's driver and that any intrusion on appellant's Fourth Amendment rights was *de minimis*. Although this argument is appealing on its face, the Commonwealth cannot cite any case law that expressly supports such an approach. More importantly, the Commonwealth's position is contrary to a basic Fourth Amendment tenet: " 'In the absence of any basis for suspecting appellant [or the driver] of any misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference.' " *Moss v. Commonwealth*, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988) (quoting *Brown v. Texas*, 443 U.S. 47, 52 (1979) (holding unconstitutional statute which allowed police to require the production of identification by people in public places even though they were not suspected of any wrongdoing)).

Because appellant discarded the PCP while subject to an illegal seizure, admission of the item seized into evidence violated his Fourth Amendment rights, *id.* at 308-09, 373 S.E.2d at 172, and the denial of the motion to suppress constituted reversible error. *See Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980). Accordingly, the conviction is reversed and dismissed.

*Reversed and dismissed.*

Benton, J., concurred.

Willis, J., dissenting.

Officer Chewning was conducting a criminal investigation. Alone, he confronted the three occupants of the car. For his own protection while he spoke briefly with the driver, he ordered Cochran and the other passenger to remain in the car. I disagree with the majority's determination that this was "an unreasonable seizure." While the deprivation of liberty was *protanto* a seizure, the record abundantly supports the trial court's determination that it was reasonable. It was a minimal imposition on Cochran's freedom of movement to preserve the officer's safety while he made necessary inquiry. It falls squarely within the rationale of *Bethea* and *Hatcher*.

Regardless of whether Cochran was "seized," the discovery of the bag and its contents did not derive from that "seizure." For no reason disclosed by the record, Cochran got out of the car, displayed the bag, and laid it where the officer later found it. A finding that this voluntary act derived from the officer's command to remain in the car is unsupported by the record.

I would affirm.