## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Muhammad Jamil Asmar Salaam,
a/k/a Jamil Virginia

February 9, 2000

Case No. (Criminal) 96595

BY JUDGE ROBERT W. WOOLDRIDGE

This matter came before me on Friday, February 4, 2000, on the defendant's motion to suppress all evidence obtained as a result of the search of the defendant on June 29, 1999, including all evidence obtained on fingerprint cards completed after defendant's arrest. After considering the memoranda filed by both sides as well as all evidence presented at the suppression hearing, I grant the motion to suppress.

At the February 4th hearing, Detective Vorbeau of the Fairfax County Police Department testified to the following facts, which the defendant did not dispute. On June 29, 1999, members of the Fairfax County Police Department conducted surveillance of 2918 Douglas Street in the Alexandria section of Fairfax City prior to executing a warrant to search that house. Detective Vorbeau observed the defendant walk up a driveway next to the target house and disappear behind a camper that was parked in the driveway. The driveway was a common driveway for 2918 Douglas Street (a detached house located on one side of the driveway) and another detached house located on the other side. Detective Vorbeau did not see the defendant again until approximately three to five minutes later when the defendant walked out from behind the camper, exited the driveway, and left the area on foot. About one half hour

after the defendant had left the area and after the police had begun serving the warrant on the target house, Detective Vorbeau observed the defendant again walking down Douglas Street toward the area of the target house. Detective Vorbeau radioed Detective Cochrane and instructed him to stop the defendant. Detective Cochrane stopped the defendant in the street about thirty yards from the target house and asked him for identification.

The events following the stop are in dispute. Detective Cochrane testified that the defendant consented to a search of his person; the defendant testified that he did not consent. Because I find that the police did not have the requisite reasonable suspicion to stop the defendant, it is irrelevant whether the subsequent search was consensual.

Under *Terry v. Ohio*, a police officer may conduct an investigatory stop without probable cause if he has a reasonable, articulable suspicion that an individual is engaged in criminal activity. See *Terry v. Ohio*, 392 U.S. 1, 37, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The Commonwealth articulates two reasons in support of Detective Vorbeau's assumption that the defendant was engaged in criminal activity (that is, that he entered the target house for the purpose of buying or using drugs). First, the neighborhood in which the defendant was observed was known by police to be an area of frequent drug activity, and second, the defendant's conduct was consistent with that of a drug purchaser in that he disappeared from view for only a few minutes, and then left, returning to the area a short time later. The Commonwealth argues that, under *Williams v. Commonwealth*, 4 Va. App. 53, 354 S.E.2d 79 (1987), these facts amount to reasonable suspicion under the circumstances. In *Williams*, as in this case, the police stopped the defendant after conducting surveillance of a suspected drug house prior to serving a search warrant. However, in *Williams*, the police had been informed that the defendant was engaged in the sale of drugs, knew that the defendant had a history of drug-related offenses, and observed the defendant leave the target house. None of these factors was present in the instant case.

Police need have only a general suspicion of some criminal activity in order to stop an individual, as long as the suspicion is supported by articulable facts. See *Hatcher v. Commonwealth*, 14 Va. App. 487, 490, 419 S.E.2d 256 (1992). In addition, a police officer's experience must be considered in determining whether his actions were supported by reasonable suspicion. See *id.* Even considering Detective Vorbeau's experience and training, his observations in this case were not sufficient to justify a *Terry* stop. He did not observe the defendant enter the target house, had not been informed that the defendant was suspected of engaging in drug-related activity, and did not observe anything on the defendant's person that indicated he possessed any

type of contraband. The defendant's mere presence near the target house in a joint driveway and on a public street does not support a finding of reasonable suspicion.

In its opposition memorandum the Commonwealth argues that, even if the officers lacked reasonable suspicion to stop the defendant, the stop was proper under *Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), which grants police the limited authority to detain occupants of a premises while a search is being executed.[1] This argument fails because the defendant was not an occupant of the house at the time he was stopped. While the police could have prevented the defendant from entering the target house had he tried to do so, they had no authority to make an investigatory stop absent reasonable suspicion that the defendant was engaged in criminal activity.

Finally, the Commonwealth's reliance on *Welshman v. Commonwealth*, 28 Va. App. 20, 502 S.E.2d 122 (1998), is misplaced. In *Welshman* the police did not have a warrant, but were conducting surveillance of a suspected drug house. The police forced fifteen bystanders, who were standing in front of the house, to lie on the ground while they attempted to take two target individuals into custody. Police frisked one of the bystanders after noticing that he had not extended his arms as instructed. Relying on *Summers*, the Court of Appeals held that, even absent a warrant, police may detain occupants of premises during an investigation if they reasonably fear for their safety or for the safety of other bystanders. In support of its ruling, the Court noted the large number of bystanders, the defendant's behavior in failing to show his hands, and the police's knowledge that shots had been fired at the residence. In this case, the Commonwealth presented no evidence that the officers believed the defendant possessed a weapon or posed a threat of any kind.

The defendant was seized in violation of the Fourth Amendment. Therefore, all evidence obtained during the subsequent search of the

---

[1] In *Summers*, the defendant was stopped as he walked down the front steps of his house. The police had a warrant to search the defendant's house and asked the defendant to accompany them inside while they conducted the search. The Supreme Court reasoned that, because the police were about to search the defendant's house, the detention of the defendant was a comparatively minimal intrusion. "The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself." *Michigan v. Summers*, 452 U.S. 692, 700, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981). In the instant case, the defendant was neither a resident nor an occupant of the house at the time he was stopped. Thus the reasoning employed in *Summers* is inapplicable.

defendant's person as well as all evidence obtained on fingerprint cards subsequent to the defendant's arrest is "fruit of the poisonous tree." See *Wong Sun v. United States*, 371. U.S. 471, 484, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). The motion to suppress is granted.