COURT OF APPEALS OF VIRGINIA


Present: Judges Petty, Alston and Senior Judge Willis
Argued at Richmond, Virginia


MICHAEL S. ELLIOTT

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1549-09-2                      JUDGE ROSSIE D. ALSTON, JR.
                                                        SEPTEMBER 7, 2010

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                           J. Overton Harris, Judge

           Bruce P. Ganey for appellant.

           Craig W. Stallard, Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellee.


        Michael S. Elliott (appellant) appeals from his conviction of operating a motor vehicle

under the influence, fourth offense within ten years, in violation of Code §§ 18.2-266 and

18.2-270. On appeal, appellant contends the deputy sheriff who ultimately arrested him had no

reasonable, articulable suspicion of a crime in progress to justify seizing appellant and, therefore,

the trial court erred in denying appellant's motion to suppress the evidence. Appellant also

contends the trial court erred in admitting into evidence the blood test results, because the test

was not administered by an individual authorized to take a blood sample pursuant to Code

§ 18.2-268.5. For the reasons that follow, we hold that the seizure of appellant was

constitutional and the admission of the blood test results was proper. Accordingly, we affirm

appellant's conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On July 1, 2008, Deputy Sheriff DiLoreto observed appellant's vehicle approach the intersection of Bell Creek Road and Route 360 while the intersection's traffic light was red. Appellant's vehicle swerved from the second of two left turn lanes into the middle straight through lane. Appellant's vehicle came to a sudden stop, causing the front end of the car to dip and the back end of the car to rise. Appellant's vehicle was approximately one-half vehicle length over the "stop bar," i.e., the white line indicating where vehicles should stop at a red light.

DiLoreto observed appellant place his arm and head out of the driver's side window and begin to yell and make gestures toward the car in the left turn lane. DiLoreto testified that appellant's facial expressions and body movements showed anger or agitation. DiLoreto could not discern what appellant was yelling; however, DiLoreto saw a passenger in a neighboring car with a "concerned" look on her face. At trial, DiLoreto testified that traffic was heavy the afternoon of his interaction with appellant and the intersection was known as a place where instances of "road rage" occurred.

Based on his observations, DiLoreto activated his blue lights, parked his patrol car directly behind appellant's vehicle, and walked toward the driver's side of appellant's vehicle. Appellant continued to yell and gesture as DiLoreto approached. According to DiLoreto, he asked appellant in a conversational tone "what was going on," and appellant responded "that he was upset that the vehicles beside him had stopped too abruptly in th[e] left turn lane and in order to avoid them, he had to move over to that straight-ahead lane in an evasive action." Appellant appeared angry and spoke loudly during this interaction with DiLoreto. Because DiLoreto smelled a strong odor of alcohol on appellant's person, he instructed appellant to pull

_____

[1] As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

into a nearby gas station parking lot. The entire encounter took place while the traffic light was still red.

At trial, DiLoreto testified that appellant admitted he had consumed five beers several hours before driving and DiLoreto found empty beer bottles in appellant's car. DiLoreto conducted multiple field sobriety tests on appellant. During the tests, appellant was unable to follow directions, was unsteady on his feet, and lost his balance several times. Subsequently, appellant was arrested and charged with driving under the influence. After being placed under arrest, appellant was transported to the Pamunkey Regional Jail in Hanover County.

At the jail, appellant submitted to a blood test. The blood test was administered by Jean Moore, a nationally registered EMT/Paramedic, who was employed by the jail. At trial, Moore testified in detail as to how she withdrew a blood sample from appellant using a kit provided by DiLoreto. Moore explained that her responsibilities at the jail included venipuncture, or drawing blood from the vein through a needle, distributing medications to inmates, and inserting intravenous lines for the administration of fluids and medications. Moore was also employed by St. Francis Hospital, and she worked as a paramedic with the Richmond Ambulance Authority. At each of these positions, Moore was responsible for withdrawing blood from patients. Moore stated that she performed the tasks of a "phlebotomist," but she was not a licensed phlebotomist and had not been designated by a court order to perform the procedure. During direct examination, the Commonwealth's attorney asked Moore to define "phlebotomist," and Moore testified that a phlebotomist is a person who performs venipuncture blood draws.

In his motion to suppress before the trial court, appellant sought to suppress all the evidence obtained after DiLoreto approached appellant at the traffic light, claiming that DiLoreto did not have a reasonable, articulable suspicion of either a crime or a violation of the law in progress that authorized him to initiate an investigatory stop. The trial court denied this motion.

In making this determination, the trial court found that DiLoreto seized appellant when he activated the blue lights of his patrol car. The trial court further held that DiLoreto had a reasonable suspicion to investigate the circumstances associated with appellant's unusual driving behavior and that DiLoreto was not required to "sit on the sidelines and . . . see what develops."

At trial, appellant objected to Moore's testimony concerning the blood test results. He argued that the blood test results were irrelevant, because Moore lacked authority to conduct the test under Code § 18.2-268.5. The trial court rejected this argument, made a factual finding that Moore was a phlebotomist, and permitted her testimony. The results of appellant's blood test, which showed a blood alcohol level of 0.22, were admitted into evidence.

The trial court found appellant guilty of driving under the influence, fourth offense. This appeal followed.

## II. ANALYSIS

### A. The seizure of appellant was constitutional.

When considering the trial court's denial of the motion to suppress, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000)). "[This Court is] bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). "However, [this Court] considers *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Shaver v. Commonwealth, 30 Va. App. 789, 795, 520 S.E.2d 393, 396 (1999).

Appellant's motion to suppress sought to suppress all evidence obtained by Deputy Sheriff DiLoreto after DiLoreto approached appellant's car while it was stopped at a red light. Appellant argues DiLoreto had no reasonable suspicion of a crime in progress that justified the deputy's seizure of appellant at the traffic light. "Whether a stop [is] justified is dependent upon whether 'the facts available to the officer at the moment of the seizure or the search [would] warrant a man of reasonable caution in the belief that the action was appropriate.'" Wallace v. Commonwealth, 32 Va. App. 497, 504, 528 S.E.2d 739, 742 (2000) (alteration in original) (quoting Quigley v. Commonwealth, 14 Va. App. 28, 32, 414 S.E.2d 851, 853-54 (1992)). An investigative stop must be justified by a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." See Quigley, 14 Va. App. at 33, 414 S.E.2d at 854 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). See also Terry v. Ohio, 392 U.S. 1, 30 (1968); McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008); Jackson, 267 Va. at 672, 594 S.E.2d at 598. This "reasonable suspicion" must be based on "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas, 517 U.S. at 696 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." Sokolow, 490 U.S. at 7. Accordingly, this Court has held, "If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263. "Moreover, 'an officer need not suspect an individual of a particular crime in order to justify [an investigatory] stop. A general suspicion of some criminal activity is enough, so long as the officer can, based on the circumstances before him, articulate a reasonable basis for his suspicion.'" Alston v. Commonwealth, 40 Va. App. 728,

738, 581 S.E.2d 245, 250 (2003) (quoting Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992)).

While monitoring a congested intersection, DiLoreto witnessed appellant swerve between lanes and abruptly stop at a point past the "stop bar." Appellant was also yelling and gesturing at nearby motorists. A nearby motorist appeared to be concerned by appellant's behavior. Based on appellant's actions, DiLoreto had a reasonable, articulable suspicion that criminal activity may be afoot, and he was justified in his decision to briefly detain appellant to investigate the situation. Id. (citing Hatcher, 14 Va. App. at 490, 419 S.E.2d at 258).[2]

While advancing different analytical perspectives, the parties seem to agree that our decision is guided in part by the seminal United States Supreme Court case Terry v. Ohio, 392 U.S. 1, in which the Supreme Court held that a police officer discharged his "legitimate investigative function" when he initiated an investigatory stop after witnessing two men loiter on a street corner for an extended period of time, and pace back and forth down a street, stopping to look into a particular store window approximately 24 times. 392 U.S. at 22-23. The Supreme Court noted, "It would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further." Id. at 23. Appellant argues that the instant case is distinguishable from Terry because appellant was in a vehicle, unlike the defendants in Terry, who were on foot. We disagree. "In deciding whether to make an investigatory stop, 'an officer is entitled to rely upon the totality of the circumstances—the whole picture.'" Alston, 40 Va. App. at 739, 581 S.E.2d at 250 (quoting Peguese v. Commonwealth, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (en banc)). The totality of the circumstances, including the fact that appellant was swerving between

_____

[2] Notably, appellant's behavior implicated participation in several criminal actions: disorderly conduct, in violation of Code § 18.2-415, use of abusive language, in violation of Code § 18.2-416, and aggressive driving, in violation of Code § 46.2-868.1.

lanes in a manner potentially endangering himself and others on the road, yelling and gesturing at nearby motorists, and displaying apparent agitation and unusual public behavior, allowed the deputy sheriff to perform a legitimate investigative function, and thus justified the stop of appellant's vehicle.

B.  The blood test was properly admitted into evidence.

Additionally, appellant contends that the blood test results were wrongfully admitted because Moore was not qualified to withdraw blood pursuant to Code § 18.2-268.5, which states in pertinent part:

> For purposes of this article, only a physician, registered nurse, licensed practical nurse, phlebotomist, graduate laboratory technician or a technician or nurse designated by order of a circuit court acting upon the recommendation of a licensed physician . . . shall withdraw blood for the purpose of determining its alcohol or drug or both alcohol and drug content.

Appellant argues that Moore "was not a phlebotomist by job title," nor did she fall into any other category of medical professional qualified to withdraw the blood for the blood test and, therefore, the blood test results were inadmissible.

On appeal, "[g]iven the 'broad discretion' of a trial judge over evidentiary matters, [an appellate court will] apply a deferential abuse-of-discretion standard of appellate review." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (quoting Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004)).  In order for this Court to find that the trial court has abused its discretion in admitting the evidence, we must find the trial court committed an error of law. Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998).

"Principles of statutory construction mandate that we 'give effect to the legislative intent.'"  Newton v. Commonwealth, 21 Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Scott v. Commonwealth, 14 Va. App. 294, 296, 416 S.E.2d 47, 48 (1992)).  "While penal

- 7 -

statutes must be strictly construed against the Commonwealth, '[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.'" Id. (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)). Furthermore, "[w]ords in a statute should be interpreted, if possible, to avoid rendering words superfluous." Cook v. Commonwealth, 268 Va. 111, 114, 597 S.E.2d 84, 86 (2004) (citing McLean Bank v. Nelson, 232 Va. 420, 427, 350 S.E.2d 651, 656 (1986); Gallagher v. Commonwealth, 205 Va. 666, 669, 139 S.E.2d 37, 39 (1964); Tilton v. Commonwealth, 196 Va. 774, 784, 85 S.E.2d 368, 374 (1955)).

The trial court considered Moore's qualifications during her testimony. Specifically, the trial court heard that Moore was qualified to withdraw blood and worked at several jobs where her duties included the withdrawal of blood. Moreover, Moore testified, without objection, that a phlebotomist is a person who performs venipuncture, which is the drawing of blood with a needle from a vein. Her testimony was consistent with the recognized standards for the science of phlebotomy. In this regard, phlebotomy is "the letting of blood for transfusion, diagnosis, or experiment," Merriam-Webster's Collegiate Dictionary 930 (11th ed. 2003), and a phlebotomist is "[o]ne who draws blood," Taber's Cyclopedic Medical Dictionary 1657 (20th ed. 2005). Code § 18.2-268.5 does not require that the phlebotomist be registered or licensed with any state agency, as suggested by appellant, and it would be inappropriate for this Court to enhance the plain meaning of the statute to comply with appellant's interpretation of the statute. As Moore's qualifications meet the definition of a phlebotomist, the trial court properly found that Moore was a phlebotomist under the statute; thus there was no violation of Code § 18.2-268.5.

### III. CONCLUSION

For the foregoing reasons, we conclude that the trial court committed no reversible error in holding that the officer had a reasonable, articulable suspicion of criminal activity that justified the investigatory stop of appellant and that the admission of the blood test was proper. Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>